USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JOYCE DE LA ROSA,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　13-CV-7997 (VEC)
　　　　　　　　　-against-　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　OPINION AND ORDER
650 SIXTH AVE TREVI LLC and THE MEN'S　　　:
WEARHOUSE, INC.,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　　　　　:
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

　　　　This action concerns the accessibility of The Men's Wearhouse store at 650 Sixth Avenue in Manhattan to persons in wheelchairs. Specifically, Plaintiff Joyce De La Rosa, who is disabled and wheelchair-bound, alleges, *inter alia*, that The Men's Wearhouse ("TMW") is inaccessible due to an 8-inch step at the store's entrance. Plaintiff asserts claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*; New York State Human Rights Law ("NYSHRL"), Executive Law § 296; and New York City Human Rights Law ("NYCHRL"), § 8-107. The parties filed their Joint Pretrial Order on November 1, 2019, and trial is set to begin on February 3, 2020. Dkt. 118. Now before the Court are Defendants' three *motions in limine*. Defendants seek to: (1) exclude the testimony of Plaintiff's expert, Jimmy Zuehl; (2) exclude the 2001 architectural designs of "The Children's Place," which was the prior tenant of the space now occupied by TMW; and (3) exclude pictures of adjacent storefronts. Dkts. 109-111. For the following reasons, Defendants' motions are DENIED.

## I.　Background

　　　　Plaintiff is disabled and uses a motorized wheelchair to travel around New York. Compl., Dkt. 1 ¶ 6. Defendant 650 Sixth Ave Trevi LLC owns a multi-story building located at

650 Sixth Avenue in Manhattan and leases the ground floor space to Defendant TMW. *Id.* ¶¶ 7-8. TMW opened in 2010; The Children's Place ("TCP") previously occupied the space. Pl. Mem. of Law, Dkt. 115 at 1. Plaintiff claims that although TCP had a left-side ramped entrance, which enabled Plaintiff to enter the store, TMW demolished that entrance, leaving only a right-side entrance that has an 8-inch step off the sidewalk. *Id.* at 1-3. TMW maintains that it demolished the ramp because it was too steep to be ADA-compliant. Defs.' Mem. of Law, Dkt. 110 at 2 n.1. TMW claims that it intended to construct an interior ramp at the right-side entrance until it discovered a structural steel beam running throughout the building. *Id.* TMW asserts that it was also unable to get permission from the Landmarks Preservation Commission to construct an exterior ADA-compliant ramp. *Id.* Because TMW could construct neither an interior nor exterior ramp, TMW determined that a portable ramp would sufficiently enable customers in wheelchairs to access the store. *Id.* Despite the portable ramp, Plaintiff claims she has been unable to enter the store. *See* Compl.

Plaintiff plans to call Jimmy Zuehl[1] to testify regarding the compliance (*vel non*) of Defendants' store with ADA accessibility standards (the 1991 Standards and 2010 Standards). Zuehl's expert report details his inspection of TMW on September 9, 2014, focusing specifically on the aspects of TMW that, according to Zuehl, do not conform to the accessibility standards. *See* Zuehl Report, Dkt 109-2. Zuehl opines that, based on his measurements and observations, there are "physical access issues for persons with mobility disabilities due to architectural and design barriers." Zuehl Report at 1. Specifically, Zuehl concludes that the entrance to TMW is "not accessible due to steps at the exterior side of the entrance and a lack of pull side

---

[1] Zuehl is an architectural accessibility consultant at ARCHbility. He has over fifteen years of design and construction experience and focusses on providing "code compliance services related to accessibility in public accommodations, commercial facilities and housing." Dkt. 109-3.

2

maneuvering clearance at the entrance door," that the dressing rooms are not "fully accessible," and that the "emergency exit is not accessible due to the lack of an accessible route leading to the exit door." *Id.* at 2.[2] Plaintiff also intends to introduce design plans for the prior tenant that showed an ADA-compliant ramp. Finally, she also seeks to introduce photographs of an adjacent storefront to refute Defendants' argument that an interior ramp is not architecturally possible.

Defendants move to exclude Zuehl's report and proposed testimony on the grounds that it does not offer any scientific, technical, or specialized knowledge, he is unqualified to testify as an expert, and his testimony is irrelevant. *See* Defs.' Mem. of Law, Dkt. 109. Defendants' attacks on the other evidence focus primarily on relevance.

## II.     Discussion

### A.     Motion to Preclude Expert

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[2] Zuehl also takes issue with the height of the front service counter, Zuehl Report at 3, the accessibility of routes of travel throughout the store, *id.* at 4-9, and the accessibility of products in the store, *id.* at 11.

While the proffering party bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact, the district court acts as the "ultimate gatekeeper" against unreliable expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted); *see e.g. Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), *aff'd sub nom. Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York*, 706 F. App'x 709 (2d Cir. 2017). This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The threshold question for the Court is whether the "proffered expert testimony is relevant." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). If the proposed testimony is relevant, the Court must then determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Id.* (internal citation and quotation marks omitted). The Supreme Court has laid down several factors to consider in making this inquiry, including "whether a theory or technique . . . can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; whether uniform "standards controlling the technique's operation" exist; and whether the theory or technique enjoys "general acceptance" within the relevant scientific or professional community. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 593-94 (1993). The Court's ultimate objective is to "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

Plaintiff retained Zuehl to visit TMW, take measurements of various conditions within the store, and opine as to whether the store complies with ADA accessibility standards. The Court finds Zuehl's opinions regarding TMW's compliance (*vel non*) with ADA accessibility standards to be admissible under Rule 702.

### i. Scientific, Technical, or Specialized Knowledge

Under Rule 702, expert testimony is admissible if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." A court should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)).

Defendants argue that Zuehl's report and proposed testimony "required no expertise or technical knowledge," and should therefore be excluded. Defs.' Mem. of Law, Dkt. 109 at 7. The Court disagrees. Whether at least some of the "architectural features" of TMW comply with relevant ADA accessibility standards may not be "entirely resolvable by lay persons" without expert help.[3] *Disabled in Action v. City of New York,* 360 F. Supp. 3d 240, 245 (S.D.N.Y. 2019); *see also Van Alen v. Dominick & Dominick, Inc.,* 560 F.2d 547, 552 (2d Cir.1977) ("ordinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records"); *Dreyful Ashby, Inc. v. S/S "ROUEN"*, No. 88-CV-2890, 1989 WL 151685, at *2 (S.D.N.Y. Dec. 12, 1989) ("all doubts at a bench trial should be resolved in favor of admissibility").

---

[3] That said, as to some of the architectural features of TMW, expert testimony is hardly necessary. For example, anyone with a tape measure and at least one good eye can ascertain how high a countertop is from the floor.

5

### ii. Relevance

Testimony is relevant if it "assist[s] the trier of fact" in understanding and resolving the primary issues in the case. *In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009). Relevance can be understood as a question of "fit"—"whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (internal quotation marks omitted).

Zuehl's opinions are relevant and helpful to the trier of fact because whether the challenged features of TMW comply with ADA accessibility standards is a central question of the lawsuit. *See* Fed. R. Evid. 702(a); *Amorgianos*, 303 F.3d at 265. Thus, Zuehl's report and proposed testimony regarding the specific locations in the store that fail, in his opinion, to comply with ADA standards will assist the trier of fact in resolving the primary issues in the case. *See In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d at 173.

To the extent that Defendants argue Zuehl's proposed testimony is irrelevant because of the significant changes made to TMW since Zuehl's inspection in 2014, Defs.' Mem. of Law at 9, the staleness of his inspection goes to the weight of the testimony, not its admissibility. Defendants will be free to present evidence of alterations, the store's current configuration, and whether the current configuration complies with ADA standards. The Court is capable of evaluating Zuehl's testimony regarding the state of TMW in 2014 in light of evidence of subsequent changes. *See BIC Corp. v. Far E. Source Corp.,* 23 F. App'x 36, 39 (2d Cir. 2001) ("the admission of evidence in a bench trial is rarely ground[s] for reversal, for the trial judge is presumed to be able to exclude improper inferences from [] her own decisional analysis."); *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-CV-5804, 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 8, 2009) ("where a bench trial is in prospect,

resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence; if [defendants'] objections are well-taken, the testimony will be disregarded in any event.).

### iii. Qualifications

The Court may admit expert testimony if the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Defendants argue Zuehl is not qualified to testify as an expert because he is not a licensed architect. Defs.' Mem. of Law at 3. The Court is satisfied, however, that Zuehl possesses the knowledge, experience, training, and education necessary to offer expert testimony on TMW's compliance with ADA standards: he works as an architectural accessibility consultant; he has over fifteen years of design and construction experience; and he has extensive experience as a project manager and architecture specialist. *See* Dkt. 109-3.

For these reasons, Defendants' motion to exclude Zuehl's report and proposed testimony is denied.

### B.  Motion to Exclude 2001 Designs of "The Children's Place"

Defendants seek to exclude the 2001 architectural designs of The Children's Place on the grounds that they are irrelevant and cannot be authenticated. *See* Defs.' Mem. of Law, Dkt. 110. The Court disagrees; Defendants' motion is denied.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded only "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Fed. R. Evid. 403. This balancing test strongly favors admissibility in a bench trial. *Dreyful Ashby,* 1989 WL 151685, at *2 ("all doubts at a bench trial should be resolved in favor of admissibility"); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01-CV-3796, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) ("While the Rules of Evidence apply with equal force in jury and non-jury trials, courts often apply the relevance standard with little rigor during a bench trial.").

Defendants argue that the 2001 the designs are irrelevant because they do not reflect how TCP, and in particular the ramp outside the store's entrance, was actually built. Defs.' Mem. of Law at 5. Although the drawings indicate that a ramp with a 4-inch rise and 40-inch run was designed to be built outside the entrance, Defendants claim that measurements taken in 2009 by Joe Avallone, the Senior Project Manager for the architectural firm that designed TCP, revealed an actual rise of 8 inches and a run of just 31.5 inches. *Id.* at 3-5. Thus, because the ramp was allegedly not built according to the 2001 designs, Defendants argue the designs are irrelevant and inadmissible. The Court disagrees. First, there is some dispute about whether the measurements taken in 2009 were accurate; Plaintiff argues that Avallone failed to use a level instrument to measure the slope and that his calculations are therefore unreliable. Pl. Mem. of Law, Dkt. 113 at 5-7.[4] Regardless, the designs are relevant as some evidence of the condition of the store before TMW made alterations to the entrance. Specifically, they are relevant to support Plaintiff's argument that it was not "virtually impossible" to design and construct a wheelchair-accessible entrance on the left-hand side of the store. Even if the ramp actually built was, in fact,

---

[4] Without prejudging which party has the better argument on this issue, if Defendants are correct that the height of the TCP ramp was about 8 inches and the run was about 31.5 inches, fancy measuring devices would have been unnecessary to determine that the ramp was too steep to be ADA compliant – and that would be true even if the height were a little less than 8 inches and the run were a little longer than Defendants' measurement indicated.

8

too steep to be ADA-compliant, the designs indicate that a ramp was designed to be installed on the left-side.[5] *See id.*

Defendants also claim the designs are inadmissible because they cannot be authenticated by anyone on Plaintiff's witness list. Defs.' Mem. of Law at 6. The record contradicts this assertion; Avallone explicitly testified that he recognizes the 2001 designs and knows what they depict. Avallone Dep., Dkt. 112-7 at 26:9-26:23. Thus, because evidence can be authenticated by testimony of a witness with knowledge that "an item is what it is claimed to be," Avallone can sufficiently authenticate the designs. *See* Fed. R. Evid. 901(b)(1); *United States v. Tin Yat Chin,* 371 F.3d 31, 38 (2d Cir. 2004) (Rule 901 sets "minimal standards for authentication."); *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) ("The bar for authentication of evidence is not particularly high.")

### C. Motion to Exclude Pictures of Nearby Storefront

Finally, Defendants move to exclude three photographs of the storefront adjacent to TMW as irrelevant. *See* Defs.' Mem. of Law, Dkt. 111. The three photographs, downloaded from Google Maps, depict the storefront adjacent to TMW as it existed in 2011, 2014, and 2018. In 2011, the storefront adjacent to TMW was occupied by FedEx; in 2014 it was occupied by Blick Art; and since 2018, it has been occupied by GNC. *See* Dkts. 111-1, 111-2, 111-3. The photograph of the storefront in 2011 shows a step at the entrance, while the photographs from 2014 and 2018 show the entrance level with the sidewalk.

Plaintiff argues that the photographs are relevant to refute Defendants' claim that a steel beam running throughout the entire building prevented the creation of an accessible entrance. Pl.

---

[5] The Court disagrees with Plaintiff that it is irrelevant whether the ramp actually built conformed to the drawings. Pl. Mem. of Law, Dkt. 113 at 6 . It is not uncommon for plans to be altered in the field. In this case, regardless of what the plans called for, if the ramp as constructed was not, in fact, ADA compliant, the value to Plaintiff's case of introducing the plans will be limited.

9

Mem. of Law, Dkt 115 at 9.  Defendants respond that the photographs fail to show that the "internal and external conditions at the [store adjacent to TMW] are connected in any way to the conditions at the TMW store."  Defs.' Mem. of Law, Dkt. 111 at 5.  Although this may undermine the photographs' weight or persuasive value, it does not affect the relevance analysis.[6]  *See Wechsler v. Hunt Health Sys., Ltd.*, No. 94-CV-8294, 2003 WL 22764545, at *3 (S.D.N.Y. Nov. 21, 2003) (overruling plaintiff's objections as to relevance because the arguments "are better directed toward the weight of the evidence, not the admissibility."); *Van Alen,* 560 F.2d at 552 (explaining that "the more prudent course in a bench trial [is] to admit into evidence doubtfully admissible records," and permit the parties to aim their arguments at the weight of the evidence.).  Because Plaintiff believes that the photographs support her contention that Defendants could have created an accessible entrance similar to that of the adjacent storefront, they are relevant.  Thus, the photographs are admissible, presuming that Plaintiff calls a witness who can properly authenticate them.[7]

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion to preclude Mr. Zuehl from offering his report or testifying is DENIED.  Defendants' motion to exclude the 2001 designs of The Children's Place is DENIED.  Defendants' motion to exclude pictures of the nearby storefront is

---

[6]     The Court assumes that Plaintiff has some evidence, from an architect or engineer, for example, that will explain how the photographs undercut Defendants' explanation.

[7]     Both Avallone and Frank Khurana, the Director of Construction for TMW, testified that they recognize the storefronts depicted in each picture.  *See* Avallone Dep. 118:2-119:25, Khurana Dep., Dkt. 112-6 at 53:3-56:16.  Specifically, Avallone confirms that Plaintiff's Exhibit 6 is from October 2018 and Plaintiff's Exhibit 5 is from August 2011.  Avallone Dep. 118:22-118:25.  Moreover, Plaintiff will testify that she has observed the changing storefront depicted in the photographs over the past several years.  *See* Pl. Mem. of Law at 7.  Thus, the photographs likely can be authenticated by testimony of a witness with knowledge that the photograph is an accurate representation of the storefronts.  *See* Fed. R. Evid. 901(b)(1); *Kleveland v. United States*, 345 F.2d 134, 137 (2d Cir. 1965) ("The witness qualifying a photograph, however, does not need to be the photographer or see the picture taken. It is only necessary that he recognize and identify the object depicted and testify that the photograph fairly and correctly represents it.").

DENIED. The Clerk of Court is respectfully directed to terminate the open motions at docket entries 109-111.

**SO ORDERED.**

**Date: November 22, 2019**
      **New York, NY**

          **VALERIE CAPRONI**
          **United States District Judge**